STATE OF MAINE                                    SUPERIOR COURT
                                                  CRIMINAL ACTION
KENNEBEC, ss.                                     DOCKET NO. CR-05-229

RECEIVED AND FILED
KENNEBEC SUPERIOR COURT
2005 AUG 16 A 11: 51

DESJARDIN
COURTS

STATE OF MAINE

        v.                                        ORDER ON MOTION
                                                  TO SUPPRESS
JESSICA STREITBURGER,          SEP 14 2005

        Defendant


        This matter is before the court on defendant's motion to suppress. Defendant is

charged by complaint with criminal Operating Under the Influence, second offense,

(class D) and Operating Without a License (class E). The Operating Without a License is

based upon allegations of defendant operating a motor vehicle in violation of a

restriction on her license.

        On January 22, 2005, in the early morning hours around 4:00 a.m., a 23-year

veteran of the Maine State Police on Turnpike duty was at the Gardiner Police

Department where he had taken a detainee from a previous incident. He was advised

of a vehicle breakdown at mile 90 ½ in the northbound breakdown lane of the Maine

State Turnpike in Litchfield. The temperature was approximately one degree below

zero. The officer observed the vehicle and its registration number and determined that

it was registered to a Jessica Streitburger, the defendant, and that her operator's license

had a "Q" restriction meaning she was not licensed to operate a motor vehicle having

imbibed in alcohol. The officer then received a radio notice that the occupants were at

the Litchfield service area and he proceeded to that location. When the officer arrived

at the service area, he spoke to the station manager who advised him that there were

two girls in the Burger King associated with the vehicle breakdown. When the officer

entered the Burger King, he observed three occupants in the customer area. Two

females located at one table with no food or other evidence of dining at the table and another individual sitting at a separate table. He approached the table occupied by the two females and asked, "Are you with the disabled vehicle?" The defendant answered, "Yes." The officer's next question was, "Who was the driver?" The defendant answered, "I was." When the officer asked the defendant her name, he confirmed the same name as the registered owner. At that time, the officer observed that the defendant had an odor of an alcoholic beverage and that the eyes were bloodshot.

The officer next asked, "How long have you been here?" and received a response of, "A few minutes." Wishing to ask the defendant further questions under conditions of privacy and to remove her from presence of the passenger of the vehicle, a witness, he directed the defendant to follow him to his cruiser and she did so.

The officer's cruiser was equipped with a videotape recorder. The defendant was asked to sit in the front seat with the officer. Prior to the tape recorder being activated, the officer and the defendant had a conversation in which the defendant revealed she did not know what was wrong with the vehicle and she was not familiar with the activities of a wrecker for that purpose. While in the cruiser, the officer asked the defendant, "How come you're drinking?" making reference to her restricted license. He also asked the defendant when she had her last drink, how long it had been since the vehicle broke down, how much she had to drink, and where she had been drinking. Satisfied that the defendant had consumed alcohol and had driven the vehicle with a restricted license, the officer had the defendant get out of the vehicle where he conducted field sobriety tests recorded by the camera. Upon completion of the outside tests, the officer and the defendant reentered the cruiser where a finger dexterity field sobriety test was administered as well as an alphabet test. The officer then advised the defendant that he believed she had had too much to drink and that it was his intention

to administer an intoxilyzer test. At that point, the officer was satisfied that he had probable cause to believe that the defendant was operating a motor vehicle while under the influence. A few minutes later the defendant exited the vehicle wherein the officer placed her in handcuffs and returned her to the rear passenger seat of the cruiser.

While being driven to the Kennebec Sheriff's Office for purposes of administration of the intoxilyzer test, the defendant made unsolicited comments, not responsive to any questions by the officer.

The main thrust of the defendant's argument with regard to suppression of statements made is an assertion that the officer violated the constitutional rights of the defendant by asking her questions with respect to operation without *Miranda* warning. The defendant cites *State v. Rossignol*, 627 A.2d 524 in response to her perceived position of the State that the questions were administrative questions and not part of a custodial interrogation. *State v. Rossignol* distinguishes a custodial interrogation from administrative questions, describing administrative questions as "not likely to elicit an incriminating response, including those 'routine booking question[s]' normally attending arrest which seek 'biographical data necessary to complete booking or pretrial services' such as 'name, address, height, weight, eye color, date of birth, and current age.'" Citing *Pennsylvania v. Muniz*, 496 U.S. 582. *Rossignol* further tells us that the scope of the administrative question exception should be strictly construed citing *United States v. Gotchis*, 803 F.2d 74. Finally, *Rossignol* tells us, "If . . . the questions are reasonably likely to solicit an incriminating response in a particular situation, the [administrative question] exception does not apply." Citing *Unites States v. Mata-Abundiz*, 7717 F.2d 1277.

In the present situation, the administrative question exception has to apply. First of all, the officer had no reason to believe any criminal activity had taken place as he

was there simply to assist a stranded motorist on a bitter cold January morning. Secondly, he already knew the name of the registered owner of the vehicle and, unlike *Rossignol*, the inference that a registered owner was the operator was already established. Third, he knew that the registered owner of the vehicle had a restricted license and that at 4:15 in the morning the officer was alert to note the presence of alcohol. Fourth, at the very outset of any investigation dealing with the circumstances of a broken down vehicle on a high-speed highway, it would be the officer's responsibility to distinguish the driver from the occupants. Finally, inasmuch as the question was asked before the officer determined the aroma of alcohol, it was an administrative question to determine if the person needing assistance in transportation and disposition of the broken down automobile.

Having established a suspicion that the defendant had consumed alcohol and operated a motor vehicle while under the restriction, it was most appropriate to remove the defendant from the presence of a potential sympathetic witness and also honor her right to some degree of privacy in the investigation. It also afforded an opportunity to remove the defendant some distance from the restaurant in order to conduct the field sobriety tests.

It appears from the evidence that the officer did not administer the *Miranda* warning to the defendant until the time of the attempted administration of the intoxilyzer test. On the face of things, it would appear that the defendant was not in any form of custody while she was sitting in the passenger seat of the cruiser and until she was formally arrested with the placing of the handcuffs. However, there are factors specific to this case which modify that conclusion. First, the officer already had clear probable cause to arrest the defendant and to prevent her from further operating her vehicle that morning by virtue of the odor of alcohol and the restricted license.

Secondly, during the course of discussion, the officer made reference to taking the defendant back to her vehicle in conjunction with the activities of the wrecker operator. When she demurred, the officer stated, "You have to come with me," something less than a mere invitation. Third, during the course of the period in the vehicle and before the formal arrest, the officer stated, "I think you've had too much to drink" and advised the defendant that he would require her to undertake the intoxilyzer test. From those circumstances, the court believes it is reasonable to infer that the defendant was not free to leave, that she was going to be required to return with the officer to the disabled vehicle and that a determination had been made that probable cause existed to arrest her for Operating Under the Influence. Clearly, the responses to questions asked by the officer in the cruiser with regard to the defendant's drinking prior to and subsequent to the administration of the field sobriety tests must be suppressed.

Such is not the case with unsolicited statements made by the defendant subsequent to the arrest and during the course of being transported to the Kennebec Sheriff's Office. At one point, when the defendant, out of the blue, advised the officer she would not take the test, she made unsolicited statements with regard to drinking subsequent to the vehicle break down. It clearly appears the statements were made that were not responsive to any questions by the officer and they would not be subject to suppression.

For reasons stated herein, the entry will be:

Defendant's motion to suppress GRANTED IN PART and DENIED IN PART in accordance with the above conclusions.

Dated: August _16_, 2005

Donald H. Marden
Justice, Superior Court

STATE OF MAINE

vs

JESSICA M STREITBURGER
24 NEW STREET
PORTLAND ME 04103

DOB: 09/15/1983
Attorney: MATTHEW NICHOLS
           NICHOLS WEBB & LORANGER PA
           477 CONGRESS ST., SUITE 800
           PORTLAND ME 04101
           RETAINED 02/18/2005

Filing Document: CRIMINAL COMPLAINT
Filing Date: 03/29/2005

SUPERIOR COURT
KENNEBEC, ss.
Docket No AUGSC-CR-2005-00229

**DOCKET RECORD**

State's Attorney: EVERT FOWLE

Major Case Type: MISDEMEANOR (CLASS D,E)

## Charge(s)

1   OPERATING UNDER THE INFLUENCE-NO TEST, 1   01/22/2005 LITCHFIELD
    PRIOR
Seq 9883   29-A   2411(1-A)(C)(2)        Class D
    MAGUIRE              / MSP

2   OPERATE VEHICLE WITHOUT LICENSE          01/22/2005 LITCHFIELD
Seq 9867   29-A   1251(1)(A)        Class E
    MAGUIRE              / MSP

## Docket Events:

03/31/2005 Charge(s): 1,2
           TRANSFER -  TRANSFER FOR JURY TRIAL EDI ON 03/31/2005 @ 20:00

           TRANSFERRED CASE: SENDING COURT CASEID AUGDCCR200500721
           FILING DOCUMENT -  CRIMINAL COMPLAINT FILED ON 03/29/2005

           Charge(s): 1,2
           HEARING -  ARRAIGNMENT SCHEDULED FOR 04/06/2005 @ 10:00  in Room No.  1

           NOTICE TO PARTIES/COUNSEL
           Charge(s): 1,2
           HEARING -  ARRAIGNMENT WAIVED ON 03/29/2005

           Attorney: MATTHEW NICHOLS
           OTHER FILING -  WITNESS LIST FILED BY DEFENDANT ON 02/18/2005

           Attorney: MATTHEW NICHOLS
           MOTION -  OTHER MOTION FILED BY DEFENDANT ON 02/18/2005

           Attorney: MATTHEW NICHOLS
           MOTION FOR PREPARATION OF REPORTS BY EXPERT WITNESSES.
           Charge(s): 1,2
           TRANSFER -  TRANSFER FOR JURY TRIAL REQUESTED ON 02/18/2005

           Attorney: MATTHEW NICHOLS
           MOTION -  MOTION TO SUPPRESS FILED BY DEFENDANT ON 02/18/2005

Printed on: 08/16/2005

Attorney: MATTHEW NICHOLS
Charge(s): 1,2
OTHER FILING - OTHER DOCUMENT FILED ON 02/18/2005

Attorney: MATTHEW NICHOLS
Party(s): JESSICA M STREITBURGER
ATTORNEY - RETAINED ENTERED ON 02/18/2005

Attorney: MATTHEW NICHOLS
Charge(s): 1,2
PLEA - NOT GUILTY ENTERED BY COUNSEL ON 03/29/2005

Attorney: MATTHEW NICHOLS
Charge(s): 1,2
FINDING - TRANSFER FOR JURY TRIAL TRANSFERRED ON 03/31/2005

AUGSC
04/04/2005 Charge(s): 1,2
TRANSFER - TRANSFER FOR JURY TRIAL RECVD BY COURT ON 04/04/2005

RECEIVED FROM AUGUSTA DISTRICT COURT DOCKET NO: CR-05-721
04/04/2005 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 05/03/2005 @ 9:00

NOTICE TO PARTIES/COUNSEL
04/04/2005 HEARING - MOTION EXPERT WITNESS REPORT SCHEDULED FOR 05/03/2005 @ 9:00

05/03/2005 HEARING - MOTION EXPERT WITNESS REPORT NOT HELD ON 05/02/2005

05/03/2005 HEARING - MOTION TO SUPPRESS CONTINUED ON 05/03/2005

05/03/2005 MOTION - OTHER MOTION WITHDRAWN ON 05/03/2005

MOTION FOR PREPARATION OF REPORTS BY EXPERT WITNESSES.
05/06/2005 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 06/06/2005 @ 9:00

NOTICE TO PARTIES/COUNSEL
06/03/2005 OTHER FILING - TRANSCRIPT FILED ON 06/03/2005

TRANSCRIPT OF BMV HEARING
06/07/2005 HEARING - MOTION TO SUPPRESS HELD ON 06/06/2005
DONALD H MARDEN , JUSTICE
Attorney: MATTHEW NICHOLS
DA: PAUL RUCHA          Reporter: PEGGY STOCKFORD
Defendant Present in Court
06/07/2005 MOTION - MOTION TO SUPPRESS UNDER ADVISEMENT ON 06/06/2005
DONALD H MARDEN , JUSTICE
06/07/2005 CASE STATUS - CASE FILE LOCATION ON 06/06/2005
DONALD H MARDEN , JUSTICE
08/16/2005 CASE STATUS - CASE FILE RETURNED ON 08/16/2005

08/16/2005 MOTION - MOTION TO SUPPRESS GRANTED ON 08/16/2005
DONALD H MARDEN , JUSTICE

COPY TO PARTIES/COUNSEL    GRANTED IN PART AND DENIED IN PART
08/16/2005 MOTION -  MOTION TO SUPPRESS DENIED ON 08/16/2005
          DONALD H MARDEN , JUSTICE
          COPY TO PARTIES/COUNSEL    IN PART
08/16/2005 ORDER -  COURT ORDER ENTERED ON 08/16/2005


A TRUE COPY
ATTEST:  _____
                    Clerk